## Appeal of BUFFALO SLAG CO.

Docket No. 1161.  Submitted April 21, 1925.  Decided June 30, 1925.

*Norman G. Chambers* and *Harold C. Anderson, C. P. As.*, for the taxpayer.

*Edward C. Lake, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, and GREEN.

This appeal involves a deficiency in income tax for the calendar year 1917, in the amount of $2,412.37. The deficiency arose from

the refusal of the Commissioner to allow as invested capital $50,000 claimed as the value of a certain contract assigned to the taxpayer for its capital stock. This appeal was formerly before the Board on a motion to dismiss for lack of jurisdiction, which motion was denied. *Appeal of The Buffalo Slag Co.*, 1 B. T. A. 749.

### FINDINGS OF FACT.

1. The taxpayer is a New York corporation, with its principal place of business at Buffalo, N. Y., and was incorporated February 3, 1914, with a capital stock of $50,000, par value, which stock was equally divided between Leon Beeghly and Harris N. Snyder, who assigned to the taxpayer for the stock a certain contract with the Buffalo Union Furnace Co.

2. Beeghly and Snyder, for some years prior to the organization of the taxpayer, had experience in the preparation of waste furnace slag for use as railroad ballast, macadamized highways, and various forms of concrete work. Beeghly was the manager and Snyder was an employee of a company engaged in this work and were desirous of engaging in this business on their own account. They entered into negotiations with the Buffalo Union Furnace Co., which was engaged in the operation of blast furnaces in Buffalo, N. Y. This company had a large amount of furnace slag which was useless to it and was accumulating in immense piles about its premises. The two men proposed to utilize this waste product, but had no cash to construct a plant. After some negotiations, a contract was entered into between them and the Buffalo Union Furnace Co., in March, 1913, the pertinent parts of which are as follows:

This contract made and entered into this —— day of March, 1913, by and between The Buffalo Union Furnace Company, a corporation engaged in the operation of blast furnaces in the City of Buffalo, New York, and in the operation of its said blast furnaces *produces a furnace slag suitable for railroad ballast, macadamised highways and various forms of concrete work*, as party of the first part, and Harris N. Snyder, now a resident of Bloomville, Ohio, and Leon A. Beeghly, now a resident of 2471 Glenwood Avenue, Toledo, Ohio, *both of whom have had experience in the preparing of said furnace slag* for the purposes above mentioned, and who are desirous of entering into a contract for the handling of the furnace slag of said first party, as parties of the second part, witnesseth:

\*          \*          \*          \*          \*          \*          \*

2. In consideration of the performance of the terms and conditions on the part of the parties of the second part as hereinafter mentioned and the delivery of the Surety Bond hereinafter provided, said party of the first part agrees to give to party of the second part *the handling of the output of furnace slag produced* by said party of the first part for the years 1913 and 1914 as hereinafter provided and after the first day of January, 1915, said parties of the second part shall have the *exclusive right* to handle the entire output of fur-·

nace slag produced by said first party *for a period of ten (10) years from said date,* reserving however to said first party an amount of said furnace slag not exceeding one-third (⅓) of its entire output during any one year. This contract may be renewed under the same terms and conditions for an *additional period of ten (10) years at the option of the second parties* hereto unless first party decides to use said furnace slag for other purposes than crushed slag.

3. Said party of the first part agrees to *furnish a location for crushing plant free of cost* to said second parties, and *to construct and equip thereon a crushing plant* of approximately One Thousand (1,000) net tons capacity for ten (10) hours operation; to *furnish an initial equipment consisting of the items enumerated in schedule "A"* hereto annexed and forming a part of this contract and to have same in readiness for operation by June 15th, 1913, and to lease the same to said second parties at a *rental* of six per cent (6%) per annum on the *amount actually invested in constructing and equipping said plant.*

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

In consideration of the foregoing, said second parties agree to *operate said crushing plant* as soon as the same shall be in readiness, and will *pay all the expenses of operating said plant,* and furnish the necessary supplies such as oil, coal, etc.; and operate the same for at least eight (8) months during each calendar year during the life of this contract. That they will keep said plant and all the equipment provided by said first party in first class repair, and to have the same insured against fire, and to insure their employees against accident, all free of expense to said first party.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

9. Said parties of the second part further agree to *pay all rent hereinafter provided,* commencing January 1st, 1914, *in monthly payments* to be paid on or before the 20th day of each and every month following said first day of January, 1914.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

11. Said parties of the second part agree to pay to said first party for all slag prepared in the year 1914 up to One Hundred Thousand (100,000) net tons a royalty of two and one-half cents (2½¢) per net ton and for all slag prepared during the year in excess of One Hundred Thousand (100,000) net tons, a royalty of five cents (5¢) per net ton. Beginning with the year 1915 and continuing throughout the life of this contract said second parties agree to pay to said first party a royalty of five cents (5¢) per net ton for all slag prepared and in addition thereto one half of the average annual net price received by said second parties in excess of fifty cents (50¢) per ton.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

It is understood that inasmuch as the plant hereinbefore provided *is the property of the said first party,* said first party shall have the right to exercise control and supervision over the operation of said parties of the second part whenever if is deemed necessary by said first party for the protection of its own interests. &ast; &ast; &ast;.

[Italics ours.]

In pursuance of said contract, the Buffalo Union Furnace Co. constructed and equipped the plant referred to at the following cost:

Expenditures prior to February, 1914:

| | | |
|---|---|---|
| Crushing plant building, erected | | $13,792.61 |
| 1 No. 8 Gates crusher | | |
| 1 No. 8 style " B " 70-ft. elevator | | |
| 1 48" x 16" revolving screen | $7,322.00 | |
| Transmission, including all belts, chains, sprockets, pulleys, shafting, pillow blocks and set collars | | |
| 1 50-ft. x 16-inch belt conveyor | | |
| 1 16-ton Yale-Town chain block | | |
| 1 special double friction hoist | 1,840.00 | |
| 6 12" x 18" bin gates | | |
| 1 150-H. P. electric motor | 1,200.00 | |
| 3 electric transformers | 2,305.75 | |
| 1 70-ton Marion steam shovel | 9,500.00 | |
| 1 20-ton Porter locomotive | 2,825.00 | |
| 10 6-yd. Continental dump cars | 2,600.00 | |
| | | 27,592.75 |
| | | |
| Total | | 41,385.36 |
| Expenditures subsequent to February, 1914 | | 16,364.84 |

Commencing January 1, 1914, a rental of 6 per cent of $41,276.96 was paid, amounting to $206.39 per month. During the year 1915 this was increased $20 per month due to additional equipment purchased in that year. The Furnace Co. also furnished a railroad track scale, railroad tracks and switches and 10 acres of land for which no rent was charged, for which value was claimed as follows:

| | |
|---|---|
| Incline tracks | $1,893.74 |
| 1 railroad track scale | 4,626.00 |
| 7,420 feet of standard gauge railroad tracks | 33,390.00 |
| 10 acres of land, at $10,000 per acre | 100,000.00 |

The plant was completed and operations commenced in August, 1913, and continued to November, 1913, when the plant was closed on account of winter weather. During the fractional year 1913, the earnings, according to the books, amounted to $2,152.13.

3. The contract, above referred to, was assigned to the taxpayer corporation in February, 1914, and its entire capital stock, $50,000 par value, was issued therefor to Beeghly and Snyder. This contract was the only consideration given for the stock. The said Beeghly and Snyder continued in active charge of operating the plant and selling its products to the present time, and during all this time have operated at a profit.

The Commissioner refused to allow any value to this contract as invested capital on the ground that the plant and equipment were the property of the Buffalo Union Furnace Co. for which the taxpayer was merely paying rent, and any profit made therefrom was attributable to the efforts of Beeghly and Snyder in marketing the products.

DECISION.

The determination of the Commissioner is approved.